(50 Misc. Rep. 51.)

PENNSYLVANIA STEEL CO. v. TITLE GUARANTY & TRUST CO. et al.

(Supreme Court, Special Term, New York County. March, 1906.)

1. LIS PENDENS—MORTGAGE FORECLOSURE—MECHANIC'S LIEN.

After the filing of a lis pendens on foreclosure of a second mortgage, a materialman filed a notice of lien, under Laws 1897, p. 525, c. 418, § 21, against the holder of a building loan mortgage and the holder of the second mortgage and the owner of the premises. Held, that in an action to foreclose, the lien plaintiff, though not a party to the mortgage foreclosure, is bound by the judgment therein to the extent of all proceedings taken after the filing of the lis pendens, as provided by Code Civ. Proc. § 1671, and the judgment in foreclosure operates as a bar against him so far as to prevent him from foreclosing his lien against the property.

2. MORTGAGES — BUILDING LOANS — PRIORITIES — MECHANICS' LIENS — FIL-
   ING BUILDING LOAN AGREEMENT.
     A title company entered into a building loan agreement, but failed to
   incorporate in such agreement, which was filed under Laws 1897, p.
   525, c. 418, § 21, a provision that the mortgage executed simultaneously
   with the agreement should be made a first lien. *Held* that, by using part
   of the loan to pay off a first mortgage, it was liable to have its in-
   terest in the property subjected to the lien of the materialman, rely-
   ing on the agreement that the entire building loan should be devoted to
   the building under construction.
3. SAME—SUBSEQUENT CONTRACT OF SALE.
     Where a loan company failed to include in its building loan agreement,
   filed under Laws 1897, p. 525, c. 418, § 21, a provision that the mortgage
   should be a first lien, and used part of the loan to pay off a first mort-
   gage, the provision of the statute that a materialman filing a lien under
   such circumstances should have priority of the older mortgage did not
   attach to the interest of the owner and the holder of a second mortgage
   because of a failure to file a contract of sale of the premises, which
   provided that if, on completion of the building, the owner needed further
   funds, the other party to the contract would advance a certain amount;
   as such contract did not constitute a building loan agreement, within the
   meaning of section 21 of the act.
4. PARTNERSHIP—EVIDENCE.
     Where the holders of a second mortgage insisted on the observance of
   the specifications of the building contract between the mortgagor and a
   building contractor, and paid certain compulsory labor claims, it did not
   establish a partnership between the second mortgagee and the owner, so
   as to render such mortgage liable for the materialman's claim as a
   partner.
5. MECHANICS' LIENS—PROPERTY SUBJECT.
     Where certain lienors filed their liens only against the owner, they can
   assert no claim as against a mortgagee of the premises.

Action by the Pennsylvania Steel Company against the Title Guar-
anty & Trust Company and others to foreclose a materialman's lien.
Judgment for plaintiff.

Battle & Marshall (H. Snowden Marshall, of counsel), for plaintiff.
Harold Swain, for defendant Title Guaranty & Trust Co.

Simpson, Werner & Cordoza (A. J. Simpson, of counsel), for de-
fendants Star Holding Co. and defendants Potter.

Eustis & Foster (John E. Eustis, of counsel), for defendant Pelham
Operating Co.

Eidlitz & Hultse (Arthur Mayer, of counsel), for defendants White
Granite Co. and Miller, Daybill & Co.

Julius D. Tobias, for defendants George Call & Co. and Horace E.
Hartwell.

James C. De La Mere, for defendants Forgotston.

LEVENTRITT, J. In May, 1903, the premises 4, 6, and 8 East
Twenty-Eighth street, New York City, were purchased by the defend-
ant Eugene Potter, subject to a mortgage of $160,000, and in Novem-
ber following, a contract of sale was made by the defendant Frederick
Potter with the defendant L. George Forgotston. The purchase price
was fixed at $265,000, which Forgotston was to pay by assuming the
existing mortgage of $160,000, and executing and delivering a pur-
chase-money mortgage for the remaining $105,000. The contract of

sale provided that Forgotston should erect upon the premises a build-
ing, which was specifically described, and it provided that Potter
should procure for Forgotston's benefit a building loan of $370,000.
The contract contained all the terms of the proposed building-loan
agreement, the stages of construction at which the respective instal-
ments were to be paid, and the purposes to which they were to be ap-
plied.   The first instalment was fixed at $170,000, out of which For-
gotston was required to discharge the $160,000 mortgage.   Provision
was also made for the payment out of the building loan of $11,100 for
Potter's services in procuring the loan.   Through the efforts of Eu-
gene Potter, the defendant Title Guaranty & Trust Company, in No-
vember, 1903, consented to make the building loan upon the terms of
the agreement between Frederick Potter and Forgotston.   In Decem-
ber, 1903, pursuant to the contract of sale, Eugene Potter conveyed
the premises in question to Forgotston, subject to the ground mortgage
of $160,000, and for the equity a purchase-money mortgage of $105,000
was executed and delivered to Frederick Potter.   No point is made of
the fact that one of the Potters owned the property and executed the
deed, while the other contracted for the sale and received the purchase-
money mortgage, and that fact does not affect the rights of any of the
parties.   In January, 1904, building operations were started.   In April,
1904, the plaintiff contracted with Forgotston to furnish materials for
the structural ironwork in the building to be erected.   On August 25,
1904, the Title Guaranty & Trust Company executed a building loan
agreement with Forgotston.   That agreement did not provide for the
application of any part of the loan to the discharge of the $160,000
mortgage, or to the payment of Potter's commissions, although it was
understood between Potter and the title company, as it had been be-
tween potter and Forgotston, that a part of the loan should be applied
to the discharge of that mortgage and the payment of those commis-
sions.   The agreement called for absolute payments to be made at
stated stages of construction, and, for aught that appeared to the con-
trary, the whole sum was to be devoted to the building.   The agree-
ment did provide that the building loan mortgage was to be a first lien,
but it did not provide that any part of the loan was to be used to make
it a first lien.   Simultaneously with this agreement, Forgotston ex-
ecuted a mortgage to the title company for $370,000 to secure the ad-
vances to be made.   Thereupon he received the title company's check
for $170,000, being the first instalment.   That check he immediately
indorsed and returned to the company.   In lieu thereof the title com-
pany drew its four checks, and thereby distributed the $170,000 as
follows:   One to the order of Thomas W. Butts, the attorney for the
mortgagee, for $164,580.87, in satisfaction of the ground mortgage of
$160,000, together with the interest thereon; another to the like order
for $105, in payment of counsel fees in connection with that mortgage;
the third in the sum of $2,220, representing the first instalment of
Potter's commissions, drawn to the order of Forgotston, by him in-
dorsed and at once returned to the company; and the fourth, in the
sum of $2,994.13, also drawn to the order of Forgotston, but by him
retained, and representing the entire amount remaining to him out of

the installment of $170,000. On August 25, 1904, Frederick Potter executed an agreement subordinating his mortgage of $105,000 to the title company's mortgage. This, together with the payment of the $160,000 mortgage out of the loan, made the title company's mortgage a first lien. On August 27, 1904, the building loan agreement between Forgotston and the title company was filed in the county clerk's office. Prior to the execution of this agreement the plaintiff had furnished, and it thereafter continued to furnish, materials to Forgotston, under its contract with him, until the latter part of October, 1904, when he decamped, after having defaulted in several of his payments. In October, 1904, Frederick Potter assigned the $105,000 mortgage to the defendant Star Holding Company. On November 3, 1904, that company commenced the foreclosure thereof, and filed its complaint and notice of lis pendens. In that action the Title Guaranty & Trust Company was made a party defendant for the sole purpose, as alleged in the complaint, of having the amount of its first mortgage lien computed. A reference followed, and the sum of $220,000 principal, and $4,250.66 interest, was reported due. The action proceeded to judgment, and on February 7, 1905, the premises were sold at public auction, subject to the title company's lien as computed, to one Anna M. Somerville for the Star Holding Company. In March, 1905, the premises were conveyed to the Gotham Construction Company. On November 7, 1904, the Pennsylvania Steel Company, the plaintiff herein, filed its notice of lien against the respective interests of the Title Guaranty & Trust Company, Star Holding Company, and Frederick Potter as owners, in the following language:

"The name of the owners of the real property against each of whose respective interests therein a lien is claimed are: Title Guaranty & Trust Company, a corporation organized and existing under and by virtue of the laws of the state of New York; Star Holding Company, a corporation organized and existing under and by virtue of the laws of the state of New York; and Frederick G. Potter; and the interests of the said respective owners, so far as known to the lienor, are as follows: The said Star Holding Company is assignee of a mortgage covering the premises hereinafter described dated December 31, 1903, from L. George Forgotston to Frederick G. Potter. The said Frederick G. Potter is the mortgagee named in said mortgage dated December 31, 1903, from L. George Forgotston to the said Frederick G. Potter. The said Title Guaranty & Trust Company is the lender in a certain building loan agreement in regard to the premises hereinafter described, dated August 25, 1904, between the Title Guaranty & Trust Company and L. George Forgotston, and is the mortgagee in a certain mortgage covering the property hereinafter described, dated August 25, 1904, between L. George Forgotston and the said Title Guaranty & Trust Company."

Under these facts the plaintiff seeks the following relief: (1) The foreclosure of the lien against the premises in question; (2) the recovery of a personal judgment against the defendant Forgotston and also against the defendants Potter as partners of, or as being engaged in a joint enterprise with, Forgotston; and (3) the enforcement of its lien and claim against the interest, respectively, of the defendants Frederick Potter and the Star Holding Company under the $105,000 second mortgage, and of the Title Guaranty & Trust Company under its building loan mortgage.

The judgment of foreclosure is invoked as a bar to the present action. It is contended that the plaintiff's rights and claims could and should have been litigated in the foreclosure action; that the plaintiff should have applied to be made a party to that action as a person having an interest in the subject-matter thereof; that, having permitted the opportunity to pass, the action to proceed to judgment, and the property to be sold and conveyed, it is bound by the judgment.

The plaintiff's lien was filed subsequent to the filing of the lis pendens in the foreclosure action, and, although the plaintiff was not a party to that action, it is bound by the proceedings taken therein, under Code Civ. Proc. § 1671, which reads as follows:

"Where a notice of the pendency of an action may be filed, as prescribed in the last section, the pendency of the action is constructive notice, from the time of so filing the notice only, to a purchaser or incumbrancer of the property affected thereby, from or against a defendant, with respect to whom the notice is directed to be indexed, as prescribed in the next section. A person, whose conveyance or incumbrance is subsequently executed, or subsequently recorded, is bound by all proceedings taken in the action, after the filing of the notice, to the same extent as if he was a party to the action."

That language is clear and specific, and its effect should be kept within the limitation prescribed. It does not extend the doctrine of res judicata to persons not parties. It embraces only such matters as were actually litigated, and binds only to the extent of proceedings actually taken. Therefore, while the plaintiff is bound by the terms of the foreclosure judgment, and cannot enforce its lien against the property sold under judicial decree, it has not been deprived of the right to litigate here any issue not raised or passed upon or involved in any proceeding taken in the foreclosure action. It is bound by the foreclosure judgment only so far as the statute binds it, and the statute binds it only to the extent of "all proceedings taken in the action after the filing of the notice" of lis pendens.

The doctrine of res judicata does not apply to the facts of this case. The general rule is that a judgment is final and conclusive between the parties or their privies, not only as to the matters actually determined, but as to every other matter which the parties might have litigated and had decided as incident to, or essentially connected with, the subject-matter of the litigation, within the purview of the original action, either as a matter of claim or defense. Earle v. Earle, 173 N. Y. 480, 487, 66 N. E. 398; Reich v. Cochran, 151 N. Y. 122, 45 N. E. 367, 37 L. R. A. 805, 56 Am. St. Rep. 607; Patrick v. Shaffer, 94 N. Y. 423, 430; Pray v. Hegeman, 98 N. Y. 358; Hymes v. Estey, 116 N. Y. 501, 22 N. E. 1087, 15 Am. St. Rep. 421. The expression "might have been litigated" is misleading. Freem. Judg. (4th Ed.) § 249. The Court of Appeals has on several occasions defined and restricted its meaning. In Earle v. Earle, supra, it is limited "to such matters as might have been used in the former action as a defense to an adverse claim made by the plaintiff therein" or by a codefendant. In Malloney v. Horan, 49 N. Y. 111, 10 Am. Rep. 335, it is said that:

"When the authorities say that a judgment is final and conclusive upon the parties to it as to all matters which might have been litigated and decided in the action, the expression must be limited as applicable to such matters only

as might have been used as a defense in that action against an adverse claim therein; such matters as if now considered would involve an inquiry into the merits of the former judgment"—citing Whitcomb v. Williams, 4 Pick. (Mass.) 228; King v. Chase, 15 N. H. 13, 41 Am. Dec. 675.

Again, it is said that, in order to ascertain what might have been litigated in the former action, "it is proper to look beyond what appears on the face of the judgment, to every· allegation which, having been made on one side and denied on the other, was at issue and determined in the course of the proceedings." Griffin v. L. I. R. R. Co., 102 N. Y. 449, 452, 7 N. E. 735.

The title company was made a party defendant in the foreclosure action for the express purpose, and no other, of having the amount of its lien determined. The property was sold subject to the amount reported due. There was no issue presented, and therefore none litigated between the title company and any codefendant. While the court has power to determine in an action the ultimate rights of defendants as between themselves, even though such rights are not material to the actual issue before the court or to the relief to be administered, they must, at least, in some manner be brought to the notice of the court, and actually determined or involved in the judgment, to make that judgment operative upon and conclusive as to them. Fairchild v. Lynch, 99 N. Y. 359, 2 N. E. 20. Therefore, a judgment is not res judicata of the matters determined in favor of one defendant as against another defendant where the interests of the defendants were not joint, and no issue between them was tendered or litigated. 2 Black, Judg. § 599; Freem. Judg. (4th Ed.) § 158; Beveridge v. N. Y. El. R. R. Co., 112 N. Y. 19, 19 N. E. 489, 2 L. R. A. 648; O'Connor v. N. Y. & Yonkers Land Co., 8 Misc. Rep. 243, 245, 28 N. Y. Supp. 544. Or, as is said in Rudd v. Cornell, 171 N. Y. 114, 126, 63 N. E. 823, "a judgment against several defendants cannot determine their rights as between themselves unless they are drawn in issue"—citing Big. Estop. § 96.

The foreclosure judgment, in the absence of the statute, would bind only the parties and their privies. The Pennsylvania Steel Company was not a party, and the right which is here asserted against the title company is not derived "from, through, or under" it, but arises by operation of law. Lien Law, § 21. Had the Pennsylvania Steel Company been a party to the foreclosure action, the present issue between it and the title company could not have been there raised or litigated. Smart v. Bement, 4 Abb. Dec. 253; N. Y. Life Ins. & T. Co. v. Cuthbert, 87 Hun, 339, 34 N. Y. Supp. 300. But, even if the steel company had been made a party and could have litigated the claim, it was not bound to do so. Earle v. Earle, 173 N. Y. 480, 66 N. E. 398. The claim here presented would not have been a defense to any issue raised by the pleadings in the foreclosure action, nor was it connected with the subject-matter of that litigation—the foreclosure of the second mortgage. My conclusion is, therefore, that the judgment of foreclosure operates as a bar only in so far as it prevents the plaintiff from foreclosing its lien against the property.

The plaintiff's notice of lien was filed against the interests of the title company under its building loan mortgage, and against the inter-

ests of the Star Holding Company and Frederick Potter under the second mortgage of $105,000. The plaintiff relied for relief against the title company upon section 21 of the lien law (Laws 1897, p. 525, c. 418), which provides:

"A contract for a building loan, either with or without the sale of land, and any modification thereof, must be in writing and duly acknowledged, and within ten days after its execution be filed in the office of the clerk of the county in which any part of the land is situated, and the same shall not be filed in the register's office of any county. If not so filed the interest of each party to such contract in the real property affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien under this chapter. A modification of such contract shall not affect or impair the right or interest of a person, who, previous to the filing of such modification had furnished or contracted to furnish materials, or had performed or contracted to perform labor for the improvement of real property, but such right or interest shall be determined by the original contract. The county clerk is entitled to a fee of twenty cents for filing such contract or modification. Such contracts and modifications thereof shall be indexed in a book provided for that purpose, in the alphabetical order of the names of the persons to whom such loans shall be made."

The protection of the materialman, at which the statute aims, depends entirely upon the filing of the building loan agreement. The statute is a safeguard against secret arrangements between lender and owner or contractor. It commands that all agreements or modifications thereof be filed. The object is to acquaint the materialman with the exact amount of money to be advanced, the purposes to which it is to be applied, and the times when or the stages of construction at which advances are to be made. In the terms of the agreement, is he to find a guide to his dealings with the owner or contractor? Therefore, the agreement filed should be a true agreement. Nothing should be left to conjecture. The materialman is not called upon to inquire beyond the actual terms of the filed instrument. The agreement is his source of information; the statute his protection. In the event of failure to comply with the statute, the interest in the real property of each party to the agreement is subjected to the lien and claim of the materialman thereafter filing his notice of lien. Had the building loan agreement between the title company and Forgotston provided for the payment of the $160,000 mortgage and the commissions of $11,100, there would have been compliance with the statute. It contained no such provision. It called for a first payment of $170,000, but all that Forgotston received was $2,994.13. By its terms $370,000 was to be advanced for construction, while, as a matter of fact, only about $195,000 was to be available for that purpose. The first payment was to be made when the second tier of the ironwork was completed. The plaintiff's materials were required in the early stages of construction, and it was justified in relying upon the first instalment as a source of payment.

But the contention of the title company is that the agreement filed is complete and accurate. That contention fails. Eugene Potter applied to the title company for a building loan upon the terms of the Potter-Forgotston contract, which he delivered to the title company, and which was closely followed in the drafting of the agreement be-

tween the title company and Forgotston. The schedule of payments was transcribed verbatim, with the sole exception of the provision for the satisfaction of the $160,000 mortgage. It follows that the title company cannot now disclaim the knowledge which the Potter-Forgotston agreement imparted—the knowledge that the $160,000 mortgage was to be satisfied out of the $170,000 instalment. Of course, the mere acquisition of that knowledge was not sufficient to attach any liability to the title company, yet it is a fact of some significance, and not to be overlooked. The liability flows from the adoption by the title company of the Potter-Forgotston means of discharging the $160,000 mortgage, and its omission to incorporate that means in its building loan agreement with Forgotston. The president of the title company admits that he arranged with Potter that the $160,000 mortgage was to be retired out of the first payment on the building loan. Yet the building loan agreement filed is silent as to the intended application of any part of the loan to the retirement of that mortgage; and the only reasonable deduction to be drawn from its language is that the entire loan would be devoted to construction, notwithstanding the provision that the building loan mortgage was to be "subject to no incumbrance."

The plaintiff had a right to rely on the letter of the building loan contract. It had the right to rely upon the assurance it contained that Forgotston would receive $370,000 to be devoted to the building under construction. The statute called upon the title company to reduce the entire agreement to writing, and to file it in the county clerk's office, and, as a penalty for failure, prescribed that its interest under the contract should be subject to the lien and claim of the plaintiff. The true agreement between the title company and Forgotston was never filed; the title company has, therefore, incurred the penalty prescribed by the statute.

The plaintiff contends that the statutory liability attaches, also, to the interests of the defendants Frederick Potter and Star Holding Company under the second mortgage of $105,000 because of the omission to file the Potter-Forgotston contract of sale. That contract provided that, if upon the completion of the building Forgotston needed further funds, Potter would advance $10,000. That did not constitute a building loan agreement, within the meaning of the statute, and hence there was no occasion for filing.

The plaintiff claims, also, that the defendants Potter are personally liable as partners of, or engaged with Forgotston in, a joint building enterprise. The evidence discloses no act on the part of the Potters indicative either of partnership or joint enterprise. Nothing was done by them inconsistent with an intention to protect their interests under the $105,000 mortgage. That mortgage covered their investment, as well as their profit upon the sale to Forgotston. To the adequate improvement of the property they looked for realization. Therefore, it was important that they should hold Forgotston to the strict performance of his building contract. They stationed their representatives on the premises, advised on different occasions with Forgotston and his architect, and repeatedly complained of defects in the building, and in-

sisted that it be constructed according to specifications. After Forgotston disappeared, they paid certain compulsory labor claims. These acts, under the circumstances, indicate nothing more than an intention of the Potters to conserve their interests under their mortgage, and do not point to copartnership or joint enterprise.

The plaintiff, in addition to its relief against the title company, is entitled to a personal judgment against the defendant Forgotston. The defendant lienors, having filed their liens only against Forgotston as owner, can assert no claim against the title company (Packard v. Sugarman, 31 Misc. Rep. 623, 66 N. Y. Supp. 30), and are limited to a personal judgment against Forgotston (Bradley & Currier Co. v. Pacheteau, 175 N. Y. 492, 67 N. E. 1080).

Judgment accordingly.