Angelo Graci, J.
This is an action to foreclose a consolidated building loan mortgage on real property located in this county. The plaintiff is the lead lender on a $16,000,000 construction loan, secured by a consolidated mortgage dated June 28, 1972. As originally planned, the property was to consist of residential rental apartments, a parking area and a commercial building.
The commercial building, although part of the premises secured by the mortgage, was built with funds other than those advanced by the plaintiff. A modification of the building loan mortgage, dated January 14, 1974, permitted the owner *773 mortgagor to convert the two residential buildings into condominiums.
The project has been substantially completed. Of the 458 condominium units which have been constructed, approximately 285 have been conveyed, and approximately 46 have been placed under contract but not closed. The unrefunded down payments on these units aggregate approximately $165,-000. Title to the units conveyed is not directly affected by this action. Subsequent to the conveyance of the 285 units, mechanic’s liens totaling approximately $2,500,000 were filed against the property.
Approximately 56 defendants have been named consisting of: Village Mall at Hillcrest, Inc., the mortgagor, which is the owner sponsor of the residential buildings, four individual personal guarantors, the mechanic’s lienors, Hillcrest Management Corp., Inc., being the management agent designated in the condominium offering, the Board of Managers of Village Mall at Hillcrest Condominium, managers of the condominium, and Village Mall Terrace, Inc., a corporation to which the commercial noncondominium building was conveyed by the mortgagor. In addition, 200 "John Doe” defendants, who claim or may claim by virtue of having supplied materials, labor or other services, and 500 "Richard Roe” defendants, having or claiming an interest in the mortgaged premises by virtue of being tenants or occupants, were named.
Answers in which various affirmative defenses, counterclaims and cross claims are asserted have been served by 15 mechanic’s lienors, and the Attorney-General for the People of the State of New York. Except for these, no other defendants have answered.
A temporary receiver was appointed for the premises not under control of the board of managers, but with no power to sell. A motion by the receiver to borrow $125,000 for alleged emergency repairs was denied on the basis that such repairs were the responsibility of the board of managers.
The defendant, Simpson Electric Corp., one of the mechanic’s lienors, moves for summary judgment on the ground that its mechanic’s lien is prior to the lien of the plaintiff and that certain of the moneys paid back to the plaintiff on its loan be paid into court and held in trust for itself and others. The mechanic’s lienor, National Wall Systems, moves by separate notice, and mechanic’s lienor defendants, World Carpets of N. Y. and A. Wachsberger Roofing & Sheet Metal Works, Inc., *774 cross-move for similar relief. Mechanic’s lienor, Dic-Underhill, a joint venture, cross-moves for similar relief and for leave to serve an amended answer.
The Attorney-General moves by separate notice for summary judgment declaring that the plaintiff be denied its lien priority under the building loan contract and that all moneys received by the plaintiff from acts in violation of article 23-A of the General Business Law be paid into court and held in trust for the benefit of the contract vendees.
In addition, approximately nine other defendant mechanic’s lienors have filed affidavits or affirmations with the court supporting to one degree or another some of the various motions and cross motions without themselves moving for relief. The board of managers, which is in default in this action, has submitted an affidavit in support of the Attorney-General’s motion.
National Wall Systems, by separate notice, also moves for appointment of a receiver for the commercial building on the grounds, inter alia, that the present receiver’s powers do not extend to that property and that the $300,000 bond required before the receiver could enter office has never been posted. This motion is opposed by the plaintiff who is the original owner sponsor and grantor of the commercial building, by its present owner and by the receiver.
All motions for summary judgment are opposed by the plaintiff, who also opposes the appearance and assertion of claims by the Attorney-General on behalf of the contract vendees and the public generally, on the grounds that the Attorney-General has no standing to do so in the manner pursued, and, further, that he is in default in failing to answer within the prescribed period.
The mechanic’s lienors contend that the usual priority of the plaintiff bank’s mortgage has been lost because of certain Lien Law violations by the bank that subordinates it to the liens of those who provided labor and material in creating the improvements on the land.
The Attorney-General contends that the plaintiff bank has, among other statutes, violated the full disclosure provision of section 352-e of the General Business Law relating to public offerings of co-operative interests in realty, insofar as it applies to condominiums (Real Property Law, § 339-ee), thereby misleading and deceiving the public and violating plaintiff’s duty to the People of the State of New York. The Attorney- *775 General is concerned with the unrefunded down payments by the contract vendees to whom title has not been conveyed, the occupants of the conveyed condominium units who are liable for the common charges attributable to the common elements of the property involved because of lack of revenue from the unconveyed units, and concern for the public at large.
That branch of defendant Dic-Underhill’s cross motion for leave to amend its answer to add an affirmative defense in the form annexed is granted. Said defendant may serve the proposed amended answer within 10 days after service of the order to be entered hereon.
The motion by the defendant, National Wall Systems, for appointment of a receiver of the rents and profits of the commercial building was based on erroneous information that a receiver had not been appointed for the commercial building. In fact, under the order of this court entered October 23, 1974, which was modified by the order entered November 29, 1974, a receiver had been appointed for all property not previously conveyed to individual condominium owners.
This receiver is empowered inter alia to lease, manage and make repairs not in excess of the sum of $15,000 and to employ a designated management agent. In addition, the parties, together with the receiver, were ordered to attempt to reach an agreement as to a plan for the management of the property pending the determination of this action as well as for the sale or lease of the unsold units subject to court approval. The receiver filed a $300,000 bond on October 30, 1974.
The movant in its attorney’s reply affidavit acknowledged the appointment of the receiver but requested that a separate receiver be appointed for the commercial building, since under sections 13 and 22 of the Lien Law the ultimate interests in the commercial property might be different from those of the remaining property. The court finds this to be insufficient reason to discharge the original receiver and appoint a new and separate receiver for the commercial property. It would seem advisable, however, for the receiver to maintain separate accounts for the two parcels. Accordingly, the property subject to the power of the receiver shall be administered by him as two separate entities consisting of: (1) the commercial building; and (2) balance of property. All assets of personalty deriving therefrom shall be kept apart and not commingled without permission of the court, and separate records of *776 specific receipts and expenditures of receivership funds shall be maintained. This motion is granted to that extent only and is in all other respects denied.
Prior to determination of the motion by the Attorney-General for an order denying the plaintiffs lien priority and requiring that the plaintiff pay certain moneys into court for the benefit of the contract vendees, it is necessary to dispose of the claim by the plaintiff that the Attorney-General should not be heard since he was in default in answering the complaint for 11 months and, further, that he cannot assert affirmative defenses because the People have been made defendant solely to bar them from any unpaid corporate franchise taxes due, to which the affirmative defenses are not responsive. With regard to the default in answering, the following approximate chronology of events is recited.
The Attorney-General was served during October, 1974, appeared November 27, 1974, was served with supplemental complaint on January 16, 1975, and did not answer until December 4, 1975. During the intervening period, it is not disputed that the Attorney-General worked diligently with about 40 of the parties in an attempt to work out a settlement. The plaintiff participated considerably in these efforts, there being many exchanges of various kinds between the Attorney-General and the plaintiff. By October, 1975 settlement attempts were abandoned and motions for summary judgment by some of the mechanic’s lienors were made. After several adjournments, the motions were heard on December 3, 1975, at which time in open court with plaintiff present, the Attorney-General moved for permission to serve an answer. A reading of the transcript of December 3, 1975 indicates that though the plaintiff initially took issue with the Attorney-General’s application, the main object of the mechanic’s lienors present, as well as the plaintiff, was to dissuade the court from adjourning argument on the motions for summary judgment pending service of the Attorney-General’s answer. Because of this, the plaintiff’s counsel finally said that he had no objection to giving the Attorney-General time to "put in his papers”, to which the parties could file opposing affidavits if necessary, but thought that that should not necessitate adjournment of argument on the motion. The court granted the Attorney-General’s motion, ordering short service of the answer and the motion for summary judgment that the Attorney-General stated he would make if his motion for permis *777 sion to serve the answer was granted. The court also adjourned argument on the motions for summary judgment until the date that the Attorney-General’s papers were due. However, the Attorney-General’s subsequent service of the answer and motion for summary judgment within the time frame set by the court was returned by the plaintiff by letters of December 5 and 9, 1975 as untimely (the answer) and not properly before the court (the motion).
The court having therefore on December 3, 1975 granted the Attorney-General’s motion for leave to serve an answer will now consider the plaintiffs affidavit dated December 11, 1975 as being in the nature of a motion for reargument.
The court had considered the circumstances of this litigation in which large numbers of families are undergoing varying economic and physical difficulties. These are the deteriorating state of the property, with possible health and safety consequences, as well as its diminishing value and the necessity of the condominium owners to bear an extra economic burden by reason of the unsold units. These circumstances, coupled with the discussion to follow, caused the court to exercise its discretion to extend the time to answer. The plaintiff has not shown the court that it will be prejudiced (Corrano v City of New York, 34 AD2d 980). In Bond Stores v Turner (262 App Div 417), an action by an employer against a union, the union failed to answer the complaint for more than one year because it became enmeshed in other court actions relevant to the case at hand. The court allowed the filing of an answer, noting that the defendant’s failure to answer was not willful, out of bad faith, or that the plaintiff was not damaged because of the delay and that the defendant’s affidavit indicated that it had a meritorious defense.
On the basis of the above, the court on December 3, 1975 granted the Attorney-General’s motion for leave to serve an answer. The plaintiff’s request that the court overrule that decision is denied.
The plaintiff’s argument that the Attorney-General was joined only on the issue of corporate franchise taxes and that the affirmative defenses are unrelated is essentially correct. The denials are responsive but the affirmative defenses are not connected with the complaint as it relates to the People. This is an equitable action, however, brought on by the plaintiff and is a proper one in which to invoke equitable jurisdiction. The Attorney-General would have the authority *778 to litigate against the plaintiff for the alleged violations of the Martin Act (General Business Law, § 352-e) referable to public offerings of interests in realty and other statutes, in which litigation the affirmative defenses set forth in the Attorney-General’s answer would be causes of action. Also, the Attorney-General shows every disposition that he would so litigate if cut off from this action. Were this to be done, all parties, including the plaintiff, would be put to considerable additional expense and delay. The court, in the exercise of its equitable power, determines that the affirmative defenses of the Attorney-General may remain in this action.
The Attorney-General moves for a declaration that the contract vendees have a claim to the mortgaged property superior to the lien of the plaintiff. Nothing is stated with regard to whether any of the contract vendees have litigated any claims they may have, whether any judgments have been rendered thereon, or whether any lis pendens have been filed by them. The Attorney-General grounds his contention as to superiority of position on the basis of 16 alleged violations of section 22 of the Lien Law, which are the same as the bases of the mechanic’s lienors’ motions for summary judgment, and, in addition, on the alleged violations of section 352-e of the General Business Law, claiming that by the plaintiff’s actions it participated in a public offering of securities in realty without making the required disclosure, on violations of the trust fund provisions of section 71-a of the Lien Law and section 352-h of the General Business Law requiring deposit funds coming from contract vendees to be used solely for the improvement, and on the claim that plaintiff imposed usurious loan rates in violation of section 5-501 of the General Obligations Law and Federal Reserve Regulation Z (12 CFR Part 226).
None of the alleged violations of the Lien Law are sufficiently established to warrant summary judgment declaring the position of the contract vendees superior to that of the plaintiff. The main consequence of the Lien Law violations cited by the People, i.e., loss of the plaintiff’s lien superiority, inures to the mechanic’s lienors rather than to the contract vendees. The allegation of violations by the plaintiff of the General Business Law, General Obligations Law and other statutes creates questions of fact which may not be summarily determined. The motion by the Attorney-General for a summary declaration that any claims of the contract vendees *779 against the mortgaged property involved are superior to that of the plaintiff is denied.
Although not raised squarely, the Attorney-General’s papers indicate that he also is contending that the position of the contract vendees is superior to that of the mechanic’s lienors. The applicable trust fund statutes which benefit contract vendees are section 352-h of the General Business Law and section 71-a of the Lien Law. Under section 352-h of the General Business Law, the trust exists until the funds are used for the construction. In this case there no longer are such funds in the hands of the seller, the same having been used for construction. Section 71-a of the Lien Law provides that a mechanic’s lienor trust fund beneficiary is superior to that of a contract vendee. The claim of the beneficiary of a Lien Law trust (contract vendee) is "junior to that of one holding a mechanic’s lien resulting from the same construction project.” (Ingalls Ironworks Co. v Fehlhaber Corp., 337 F Supp 1085, 1091.) Accordingly, the request by the Attorney-General for a declaration that the lien of the contract vendees is superior to that of the mechanic’s lienors is denied.
The first branch of the mechanic’s lienor defendants’ motions and cross motions for summary judgment is based on alleged violations by the plaintiff of section 22 of the Lien Law which the movants contend subordinate the plaintiff’s mortgage lien to their mechanic’s liens.
Section 22 of the Lien Law, entitled "Building loan contract” provides, inter alia: "A building loan contract either with or without the sale of land, and any modification thereof, must be in writing and duly acknowledged, and must contain a true statement under oath, verified by the borrower, showing the consideration paid, or to be paid, for the loan described therein, and showing all other expenses, if any, incurred, or to be incurred in connection therewith, and the net sum available to the borrower for the improvement, and, on or before the date of recording the building loan mortgage made pursuant thereto, to be filed in the office of the clerk of the county in which any part of the land is situated, except that any subsequent modification of any such building loan contract so filed must be filed within ten days after the execution of any such modification. No such building loan contract or any modification thereof shall be filed in the register’s office of any county. If not so Sled the interest of each party to such contract in the real property affected *780 thereby, is subject to the lien and claim of a person who shall thereañer ñle a notice of lien under this chapter. ” (Emphasis supplied.)
On many occasions courts have commented on the purpose which underlies this statute. In P.T. McDermott, Inc. v Lawyers Mtge. Co. (232 NY 336, 341-342), the court stated "[t]heir object is to acquaint prospective contractors with the fact that they furnish labor and materials subject to claims prior to theirs against the property, so far as advances thereunder are prior to their liens when filed (Lien Law, § 13), and also to inform such contractors of the amounts to be advanced and the times of such advances.” Similarly, in Rosenblum v Tilden Improvement Co. (136 App Div 743, 746), the court commented that the following quotation from the case of Pennsylvania Steel Co. v Title Guar. & Trust Co. (50 Misc 51, 60, affd 120 App Div 879, revd on other grounds 193 NY 37) was a "fair statement of the purpose of the statute”. The court in Pennsylvania Steel (50 Misc 51, 60, supra) stated: "The statute is a safeguard against secret arrangements between lender and owner or contractor. It commands that all agreements or modifications thereof be filed. The object is to acquaint the materialman with the exact amount of money to be advanced, the purposes to which it is to be applied and the times when or the stages of construction at which advances are to be made. In the terms of the agreement, is he to find a guide to his dealings with the owner or contractor. Therefore, the agreement filed should be a true agreement. Nothing should be left to conjecture. The materialman is not called upon to inquire beyond the actual terms of the filed instrument. The agreement is his source of information; the statute his protection. In the event of failure to comply with the statute, the interest in the real property of each party to the agreement is subjected to the lien and claim of the materialman thereafter filing his notice of lien.”
Accordingly, in order to effectuate the purpose of the statute, courts have not been reluctant in instances in which a building loan contract is not filed pursuant to section 22 of the Lien Law, or where a modification of the building loan contract is not filed pursuant to section 22 of the Lien Law, to make the building loan contract subordinate to a subsequently filed mechanic’s lien. (See, e.g., P.T. McDermott, Inc. v Lawyers Mtge. Co., 232 NY 336, supra.)
Having stated the purpose which underlies the statute, the *781 question now presented is to define the term "modification” so that it may be determined whether or not the changes that were made in the building loan contract in the case at bar were "modifications” within the terms of section 22 of the Lien Law. Even though the statute provides that "any. subsequent modification of any such building loan contract” must be filed, our courts have long taken the position that not every change in the building loan contract rises to the status of a modification. For example, in Pennsylvania Steel Co. v Title Guar. & Trust Co. (193 NY 37, 46, supra), the court found that an oral agreement that some of the loan proceeds be used to pay off an existing debt "was in no proper sense a modification of the written agreement between the parties, which was filed as required by law” and the court indicated that since this oral agreement "related to a mere detail of the execution of the contract”, it would not be considered a modification. While the basis of that decision has been changed because section 22 of the Lien Law now requires that a borrower’s statement be filed with a building loan contract (see, also, HNC Realty Co. v Golan Heights Developers, 79 Misc 2d 696), it is clear that the rule still is that not every change in a building loan contract is equivalent to a modification within the meaning of the Lien Law. Perhaps the best discussion and definition of when a change in a building loan contract becomes a modification which must be filed pursuant to section 22 of the Lien Law is contained in the case of New York Sav. Bank v Wendell Apts. (41 Misc 2d 527). This was an action to foreclose a building loan mortgage wherein a mechanic’s lienor moved for summary judgment claiming that its lien was not subject to the mortgage because plaintiff failed to file a modification of its building loan contract pursuant to section 22 of the Lien Law. Plaintiff admittedly failed to file the extension agreement within 10 days after its execution, and the mechanic’s lienor claimed priority over the duly recorded mortgage because of this error. The court stated (pp 529-530): "In the situation that arose in this case, a literal reading of section 22 of the Lien Law would appear to give a mechanic’s lienor a priority actually denied him under section 13 of the same law. This result, however, only obtains in the event that the extension agreement can be construed as a modification of the original building loan contract. The agreement merely extended the date for completion of the project. It did not vary or modify any of the essential terms of the contract with respect to the amount or manner of payment of advances. Consequently, the *782 extension accomplished nothing contrary to the purpose for which section 22 was designed. The latter section is intended as a safeguard to materialmen against secret arrangements between the lender and borrower. (Rosenblum v Tilden Improvement Co., 136 App. Div. 743.) The object of the statute 'is to acquaint prospective contractors with the fact that they furnish labor and materials subject to claims prior to theirs against the property, so far as advances thereunder are prior to their liens when filed (Lien Law, § 13), and also to inform such contractors of the amounts to be advanced and the times of such advances.’ (P.T. McDermott, Inc. v Lawyers Mtge. Co., 232 N.Y. 336, 341-342.) Since the extension agreement here left the parties with the same rights and liabilities as existed under the original contract it may not be interpreted as a material alteration thereof. No right of any person was enlarged or restricted or impaired by the extension of the completion date, and the agreement of September 5, 1962, is not a modification of the original loan contract within the purview of section 22 of the Lien Law. The mortgagee is thus entitled to priority under section 13. The motion must be denied, and summary judgment awarded to the plaintiff.”
Insight into other examples of when a change in a building loan contract is significant enough to be considered a modification may also be gained from examining some of the cases dealing with the filing of building loan contracts which do not comply with section 22 of the Lien Law. For example, in HNC Realty Co. v Golan Heights Developers (79 Misc 2d 696, supra), a lender filed a building loan contract in which he overstated the net sum available to the borrower for the improvement by $3,900,000. The court held that it was proper to subject it to the subordination penalty provided in section 22 because the misstatement was a material defect, stating: "The false statement in the borrower’s affidavit herein was most material and substantial” (p 702). In Ulster Sav. Bank v Total Communities (83 Misc 2d 645), however, the court took a different position. In that case it was held that even though a building loan contract filed with the county clerk’s office did not disclose the use of $63,000 of the mortgage funds to discharge the prior mortgage, there had not been any violation of section 22 of the Lien Law. The court supported its position by stating (p 648) that the méchanic’s lienor’s secured position was not "materially affected even if funds which might have been used to add further improvements to the real *783 property were actually used to discharge a lien which is admittedly superior to theirs” and that "they have not been prejudiced by any failure to report in the borrower’s affidavit a transaction that a brief examination of the public records on file in the appropriate County Clerk’s office would have revealed in any case, namely, that the prior mortgage had in fact been paid at or about the time the owner of the land acquired the proceeds of the building loan”. In the opinion of the court, this interpretation of the Lien Law clearly is not in the mainstream of the other opinions that have been analyzed. Accordingly, the court holds that where an essential term of the building loan contract is changed, such as the amount or manner of payment, a modification must be filed. From the face of the statute itself, it can be seen that those terms which are required to be stated in the building loan contract by virtue of the terms of section 22 of the Lien Law, should also be deemed material when dealing with modifications. The terms listed in the statute are the consideration paid or to be paid for the loan, the expenses, if any, to be incurred in connection therewith, and the net sum available to the borrower for the improvement. Any modification dealing with these matters is, as a matter of law, to be considered essential.
Finally, this court deals with some of the peripheral questions of law that are raised. It is well settled that the statutory requirement of filing pursuant to section 22 of the Lien Law is absolute and that a lienor’s knowledge of the agreement is not a substitute for the filing. As the court stated in P.T. McDermott, Inc. v Lawyers Mtge. Co. (232 NY 336, 348, supra): "But, having failed to file the building loan agreement of October 13, 1915, the appellant must suffer the consequences. Actual knowledge of the agreement is not a substitute for the filing. 'It does not avoid such liability to say that the materialman knew of its provisions, although not filed. The statute absolutely and unconditionally prescribes the penalty which shall follow the failure to file such a paper.’ (Hiscock, J., in Packard v. Sugarman, 31 Misc. Rep. 623, 625.) Its mortgages must be subordinated in point of time exactly as if in fact the liens came first and its mortgages came second. In that position it might have protected both itself and the lienors. It might have discharged the liens and charged the amounts paid for that purpose against the owner of the premises on account of advances.” In addition, while one court *784 has emphasized that it would apply the penalty of section 22 of the Lien Law where the building loan contract contained a materially false borrower’s statement which is known by the lender to be false at the time of such filing (see HNC Realty Co. v Golan Heights Developers, 79 Misc 2d 696, supra), no other court has construed the statute to require that any errors be the product of knowing falsity. Thus, in Ulster Sav. Bank v Total Communities (83 Misc 2d 645, 648, supra), the court stated that although the HNC Realty case (supra) had indicated that contemporary knowledge of falsity was required, "nothing in the statute justifies disparity of treatment depending upon the lender’s knowledge or lack of knowledge as to such falsity”. In the opinion of this court, the terms of the statute and the interpretation that has historically been made clearly indicate that there is no requirement that any errors be knowingly made.
At bar the defendants claim that the plaintiff violated the provisions of section 22 of the Lien Law relating to the filing of the original contract by overstating the net sum of the building loan available to the borrower by $1,600,000; omitting the following: $48,000 interest charges to be paid by the borrower in connection with the assignment of prior existing mortgages; an $80,000 financing commitment fee to be paid to the lender; a $29,000 realty appraisal expense; at least $32,000 of title examination fees; at least $40,000 finder’s fee for the mortgage commitment; at least $25,000 for real property taxes, assessment, water and sewer charges due prior to the commencement of the improvement and a $5,000 fee for the lender’s attorney. In addition, it is claimed that the plaintiff violated the provisions of section 22 of the Lien Law requiring the filing of modifications by not filing the following subsequent agreements: an agreement that the lender was to reimburse the borrower out of the loan proceeds the sum of approximately $855,000 for expenditures incurred by the borrower prior to the execution of the building loan contract; that the amount of the mortgage loan was reduced from $16,000,-000 to $14,400,000; that the parties agreed to convert the rental apartments to condominiums; that the lender was permitted to apply $470,000 of loan proceeds to reimburse itself for unsecured commercial loans to the borrower; that the sum of $1,600,000, which the original construction loan agreement required to be held as retainage, was reduced to $800,000; that the lender was to hold $100,000 in escrow in *785 connection with the sale of the individual condominium units; that the lender consented to the borrower’s transfer of the property on which the commercial building was erected to another corporation controlled by the borrower’s principals, thereby reducing the amount of property to which the mechanic’s liens could attach and that additional financing fees of $400,000 would be paid to the lender.
In the court’s opinion at least two of the subsequent agreements between the plaintiff and the property owner constituted substantive modifications which should have been filed in the county clerk’s office pursuant to section 22 of the Lien Law. The first was the conversion of the residential apartments from rental to individual condominium units on January 14, 1974. Some 18 months after construction had commenced, the plaintiff and the mortgagor executed a modification of the building loan mortgage permitting the mortgagor to "submit the improvements to be constructed on the premises * * * to the provisions of Article 9-B of the New York Real Property Law (the Condominium Act).” This modification of the mortgage was recorded in the register’s office but was not filed with the county clerk nor was a modification of the building loan contract made or filed with the county clerk.
The plaintiff contends that the amendment in question is not a modification of the building loan contract in that it does not change the amount of the loan, or manner to be advanced, and that since it was recorded in the register’s office, it became a public record. The plaintiff further contends that the building loan contract incorporates the building loan mortgage by reference and that this should alert prospective lienors to the fact that the register’s office should be checked as well as that of the county clerk’s office. The latter contention is answered by the plain words of section 22 which provides that "No such building loan contract or any modification thereof shall be filed at the register’s office of any county”.
As to the former contention, correspondence contained in the motion papers indicates that the decision to convert to a condominium was the subject of considerable discussion among the loan participants. The borrower needed the lender’s consent and both the plaintiff and at least one of the permanent lender participants (Alison Mortgage Investment Trust) showed great concern over their interests as to this matter. The latter required a "new cost breakdown showing *786 all the direct and indirect costs of such conversion and indicating the manner in which such costs are to be financed”. The conversion was a major business decision going to the heart of the arrangement between the plaintiff and the borrower. A reading of the building loan mortgage modification of January 14, 1974 would indicate the extent to which the plaintiff was concerned with the conditions of the change. Choice by the parties of modification of the mortgage as the sole means of effecting this change was apparently sufficient for them, but it did not satisfy the statutory plan for apprising parties such as the mechanic’s lienor movants that a change had occurred which substantially diluted the security upon which they were entitled to rely in the making of their business decisions concerning extension of credit to the builder. In fact, the res to which their liens would attach that stood to safeguard their interest was depleted by approximately 62%, representing the approximate percentage of the value of the improvement that could not be reached by their liens because such approximate amount had been conveyed to approximately 285 individual condominium unit fee owners.
The building loan contract though never expressly indicating that the improvement was intended as rental housing described it as: "A high-rise apartment complex consisting of two thirteen story buildings containing a total of 498 apartments and 14,400 square feet of commercial space with parking for 575 cars, located in the southeast corner of Union Turnpike and 150th Street, Queens County, New York”. The agreement is replete with boiler-plate language suggestive of nothing else but rental. The fact that the building loan contract states that the lender may release portions of the mortgaged premises from the building loan contract and the building loan mortgage and indicates that such release would not constitute an amendment or modification of the agreement does not alter the consequence of the failure to file a modification. The right of the lender to so release is not questioned, but such provision does not relieve the lender from the necessity of modifying the building loan contract and filing such modification or modification to the building loan mortgage in the appropriate county clerk’s office to reflect so overriding a change as a condominium conversion transaction. Nor does the language of the parties to the effect that a particular action between them shall not be deemed a modification of their basic understanding control. (Cf. City Bank *787 Farmers Trust Co. v Slowmach Realty Corp., 238 App Div 524.)
The court finds that the subject matter and magnitude of the modification in question satisfies any requirement that may exist as to the need for materiality and substantiality and holds as a matter of law that the plaintiff’s lien is subordinate to that of the mechanic’s lienors.
The second modification which the court finds material and essential concerns paragraph III of the schedule of payments provision of the original building loan contract which provided that:
"HI. The following conditions must be complied with as conditions precedent to the final advance, which shall not be less than 10% of the loan:
"(A) Delivery of a survey satisfactory to the lender showing the completed improvement.
"(B) A permanent certificate of occupancy.
"(C) A Board of Fire Underwriters certificate.
"(D) Compliance with all applicable terms of the building loan contract.
"(E) Purchase of the loan by the new permanent lender referred to in paragraph 38.” In approximately March of 1974 the plaintiff consented to reduce the 10% retainage to 5%, even though all conditions set forth in paragraph III had not been met. The plaintiff contends that the building loan contract permits it to accelerate an advance prior to becoming due and to waive any provision of the contract without such acceleration or waiver being deemed to be a contract modification. In the opinion of the court two parties to a building loan contract cannot agree to abrogate the provisions of section 22 of the Lien Law to the detriment of those for whom that section was enacted by providing that no change in the agreement shall be deemed a modification. (Cf. City Bank Farmers Trust Co. v Slowmach Realty Corp., supra.) This is particularly the case where such changes result in a substantial impairment of the amount of funds available or the value of the security. The modification of the retainage agreement reduced by $800,000 the amount of money which the mechanic’s lienors could reasonably have expected to be available at the completion of the project. This is a substantial and material change which could well have been detrimental to the contractors and should have been filed. The admitted failure *788 to do so is sufficient to warrant summary judgment subordinating the plaintiffs lien to that of the mechanic’s lienors.
Since either one of the two violations of section 22 would be sufficient to warrant the granting of summary judgment imposing subordination of the plaintiffs lien to that of the mechanics, it is not necessary to discuss movants’ remaining contentions in support of this branch of the motion.
The second branch of the motions by Simpson Electric Corp., National Wall Systems and the Attorney-General, and the cross motions by the defendants, World Carpets of N.Y., Inc., A. Wachsberger Roofing and Sheet Metal Works, Inc., and Dic-Underhill, a joint venture, pray for an order requiring payment into court by the plaintiff, to be held in trust for the movants and others, of all moneys received by plaintiff directly or indirectly, in whole or in part from acts in violation of the Lien Law and other laws. The plaintiff states that such an equitable remedy is not available to the Attorney-General because, inter alia, the Attorney-General has no standing on this question, nor to the other movants whose standing is only as mechanic’s lienors, a strictly statutory posture which provides for a specific remedy, such as foreclosing on the res to which their liens attach. The cases cited by the plaintiff for this proposition essentially hold that mechanic’s liens cannot equitably be established where prospective lienors have not availed themselves of the statutory way to fix liens. (Home Fed. Sav. & Loan Assn. v Four Star Heights, 70 Misc 2d 118; Billson Housing Corp. v Harrison, 26 Misc 2d 675.) They do not, however, bar resort to equitable power for the enforcement of a statutorily fixed lien if a statutory remedy exists but is insufficient in a given case. In Cerasole v Egenberger (248 App Div 587, affd 273 NY 351) there was an action to foreclose plaintiffs mechanic’s lien and to compel the lienor under a building loan agreement to pay into court an unadvanced balance of the loan for distribution among all the mechanic’s lienors on the ground that the lienor induced the mechanic’s lienors to continue working. The court compelled payment into court despite availability of the statutory remedy of foreclosure to the lienors in such circumstances.
Equitable jurisdiction of this court, having been invoked by the plaintiffs mortgage foreclosure action, may now be extended for the court to hear pleas in equity made by the movants. Once equity is invoked the court may do equity as to all parties and for complete relief (20 NY Jur, Equity, § 33). *789 Nevertheless, no basis for the aforesaid equitable relief prayed for by any of the parties has been shown which would entitle any movant to summary judgment. As to all the movants, the grounds given by them that could be bases for equitable relief, viz., bad faith, injustice, unfairness, unconscionable conduct, violation of statutes, other than the violations of section 22 of the Lien Law involve circumstances replete with triable issues that cannot be summarily decided.
As to the mechanic’s lienor movants, they have not demonstrated that the unconveyed realty units forming a considerable portion of the total high-rise premises would not be adequate security for their liens. This is particularly true since, by the order to be entered hereon, their liens will be declared superior to those of the plaintiff as to most of the realty. Those branches of the motions and cross motions for payment into court of certain moneys collected by the plaintiff as above described are denied.
Another issue raised by the moving papers is the counterclaim of National Wall Systems and the claim of Simpson Electric Corp. for lien priority superior to other mechanic’s lienors. Subdivision (1) of section 13 of the Lien Law states as follows: "Persons shall have no priority on account of the time of filing their respective notices of liens, but all liens shall be on a parity except as hereinafter in section fifty-six of this chapter provided; and except that in all cases laborers for daily or weekly wages shall have preference over all other claimants under this article.” Section 56 of the Lien Law states that a laborer, subcontractor, or materialman is prior to the person for whom he performed the labor or furnished materials. For example, a contractor engaging a subcontractor would be junior to his subcontractor.
In the case at bar the moving mechanic’s lienors are either contractors, subcontractors or materialmen. None have identified themselves as laborers for wages, nor have any distinguished themselves as being within the preferential class of section 56 of the Lien Law. They all appear to have been performing directly for Village Mall at Hillcrest, Inc., the owner of the fee. The mechanic’s lienor movants herein are regarded as a class and the priorities among them are on a parity. Accordingly, the counterclaim and claim so asserted by these movants to the extent that they maintain superiority of lien over the other mechanic’s lienors in this action are hereby dismissed.
*790 The affidavit in support of the Attorney-General’s motion for summary judgment raises the issue of responsibility for the common charges applying to the unsold units. Ordinarily, this responsibility would be that of the sponsor, who has now defaulted. The common charges for the approximately 177 unsold units which are being foreclosed were, in December, 1975, in excess of $200,000 and are being borne by the 277 unit owners. Though the Attorney-General does not expressly move to subordinate the plaintiffs mortgage to any lien of the common charges, he urges that the plaintiff should at least share in the burden because, inter alia, it benefits by any protection received by the unsold units of which it, as foreclosing mortgagee, is the equitable owner.
The board of managers of Village Mall at Hillcrest Condominium which served no answer in response to the complaint submitted affidavits in support of the Attorney-General’s motion and in partial opposition to the motions of the mechanic’s lienors with regard to the question of the standing of any lien of the common charges. Notwithstanding the board of managers’ failure to answer the complaint, the court having invoked equitable jurisdiction in the motions before it, will consider the question of the common charges since this topic permeates the controversy. Avoidance of a multiplicity of actions in circumstances where there is a community of interest in the subject matter and in the questions of law and fact involved in the general controversy are grounds for assumption of jurisdiction by equity (20 NY Jur, Equity, §§ 78, 79). The board of managers contends that under section 339-z of the Real Property Law, its lien is prior to all liens except those for taxes and all sums unpaid on a first mortgage of record. It contends further that because of plaintiffs wrongdoings, the plaintiff has lost its priority over the lien of the common charges. Section 339-aa of the Real Property Law states that the lien provided for in section 339-z of the Real Property Law "shall be effective from and after the filing in the office of the recording officer”. The board of managers has not established that it perfected any lien whatever, so that insofar as sections 339-z and 339-aa of the Real Property Law are concerned, its position is subject to the liens of the mechanic’s lienors. Whether plaintiffs alleged wrongdoings are sufficient to defeat the plaintiffs otherwise undisputed superiority over any lien of the common charges is not determinable summarily. Similarly, the contention made by the Attorney-General in his affidavit urging some sharing of the burden of the common *791 charges by the plaintiff cannot be determined by summary judgment.
Settle order and provide therein that those branches of the motions by defendants, Simpson Electric Corp. and National Wall Systems, for summary judgment and those branches of the cross motions of World Carpets of N.Y., Inc., A. Wachsberger Roofing & Sheet Metal Works, Inc. and Dic-Underhill for summary judgment are granted to the extent that the mechanic’s liens of those movants are declared to be superior to that of the plaintiff. The entry of judgment hereon shall be stayed pending the determination of the plaintiff’s action for foreclosure. That branch of the defendant Dic-Underhill’s motion for leave to serve an amended answer is granted. Defendant may serve the proposed amended answer within 10 days after service of the order to be entered hereon. The motion by National Wall Systems for the appointment of a receiver is granted to the sole extent that the present receiver shall be directed to maintain separate accounts for the two parcels so that the property subject to the power of the receiver shall be administered by him as two separate entities consisting of: (1) the commercial building; and (2) the balance of the property. All assets of personalty deriving therefrom shall be kept apart and not commingled without permission of the court, and separate records of specific receipts and expenditures of receivership funds shall be maintained. The motion by the Attorney-General for summary judgment is denied. All other branches of the motions and cross motions and all requests for relief not embodied in formal notices or cross notices of motion are denied.